UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MATTHEW I. BRENNAN,                             :
                Plaintiff,                         :
v.                                              :
                                                :
TOWN OF CLARKSTOWN; CLARKSTOWN                  :
SUPERVISOR GEORGE HOEHMANN;                     :  **OPINION AND ORDER**
CLARKSTOWN COUNCILMAN FRANK                     :
BORELLI; CLARKSTOWN BUILDING CODE               :  19 CV 11115 (VB)
TASK FORCE ATTORNEY LESLIE KAHN;                :
CLARKSTOWN ZONING BOARD OF                      :
APPEALS CHAIRMAN KEVIN HOBBS; and               :
CLARKSTOWN CODE ENFORCEMENT                     :
OFFICER RAYMOND L. FRANCIS,                     :
                Defendants.                        :
--------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Matthew I. Brennan, proceeding pro se, brings this 42 U.S.C. § 1983 action against the Town of Clarkstown (the "Town"), Town Supervisor George Hoehmann, Councilman Frank Borelli, Building Code Task Force Attorney Leslie Kahn, Zoning Board of Appeals ("ZBA") Chairman Kevin Hobbs, and Code Enforcement Officer Raymond Francis. Plaintiff alleges defendants violated his Fourteenth Amendment rights by interfering with his ability to convert his property from a single-family home to a multi-family home.

       Now pending is defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). (Doc. #28).

       For the reasons set forth below, the motion is GRANTED.

1

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.[1]

I.   Factual Background

Plaintiff is the owner of real property located at 23 Germonds Road, New City, New York (plaintiff's "home"). Plaintiff acquired the home in 1997. The home is located in the Town, in an area zoned for "single family dwelling[s]." (Doc. #1 ("Compl.") Ex. A at ECF 29).[2]

Plaintiff alleges that in 2010, he received a building permit to add a second kitchen to his home, and that on July 13, 2012, he received from the Town Building Department a Certificate of Occupancy for a second kitchen with interior alterations.

Plaintiff alleges that at an unspecified point in time, the Town "changed the property classification [for his home] from a New York State Department of Finance and Taxation 'Code 210 Single Family House' to a 'Code 215 Single Family House with year-round Accessory Apartment.'" (Am. Compl. ¶ 13). Plaintiff alleges that even though the Town does "not recognize . . . Code 215" homes, a Code 215 home is a "legal entity" because the Town "collects taxes as if these [New York State] [C]ode 215 homes are legal even though there are no specific laws regarding accessory apartments." (Id. ¶ 14). Plaintiff alleges Town policy prohibiting

---

[1]   On December 3, 2019, plaintiff filed his original complaint, and annexed exhibits to same. (See Compl.). On December 22, 2019, plaintiff filed the amended complaint, but did not annex any exhibits thereto. (See Doc. #21 ("Am. Compl.")). Because plaintiff is proceeding pro se, and because he attached exhibits to the original complaint, but not the amended complaint, the Court will consider those exhibits along with the amended complaint.

[2]   "ECF ___" refers to pages automatically assigned by the Court's Electronic Case Filing system.

2

Code 215 homes from being converted to multi-family homes amounts to "taxation without utilization." (Id. ¶ 3) (emphasis removed).

Plaintiff further alleges the Town created a rental registry to "unconstitutionally collect information on who lived where" (Am. Compl. ¶ 18), changed the definitions in the building codes for senior housing and family (see id.), and made other improper changes to the building codes. (Id. ¶ 19). Moreover, plaintiff suggests the Town's restrictive building codes and aggressive code enforcement are tied to an unlawful discriminatory purpose, to "keep[] Hasidic Jewish people from moving into Clarkstown." (Id. ¶ 2).

### A.   Building Code Violations

Plaintiff alleges that on December 9, 2016, he received a notice of violation from Code Enforcement Officer Francis for allegedly "turning his single-family house into a multi-family house." (Am. Compl. ¶ 23; see also Compl. Ex H at ECF 235). He alleges he received a second notice of violation on December 29, 2016, for failing to remove the violation identified in the December 9 notice. (See Compl. Ex. I at ECF 241). He further alleges he received a letter on January 27, 2017, from non-party Erik Asheim, the Town's Acting Building Inspector, which explained the Town "code enforcement officer's investigation found [plaintiff's] dwelling was separated into two separate dwelling units. [Plaintiff's] tenant at the time, Mr. Jacob Roy[,] stated that 'he and his family live in the main house and his landlord lives in the apartment.'" (Compl. Ex. L at ECF 261).

### B.   Appeal to the ZBA for a Use Variance

In response to these communications, on February 1, 2017, plaintiff informed Asheim that he would be applying to the Town ZBA for a use variance, to permit him to rent his home to

3

another family.  Plaintiff alleges that on May 23, 2017, he submitted his application to the ZBA for a use variance pursuant to New York State Town Law § 267-b(2).

The relevant statute provides:

2. Use variances. (a) The board of appeals, on appeal from the decision or determination of the administrative official charged with the enforcement of such ordinance or local law, shall have the power to grant use variances, as defined herein.

(b) No such use variance shall be granted by a board of appeals without a showing by the applicant that applicable zoning regulations and restrictions have caused unnecessary hardship.  In order to prove such unnecessary hardship the applicant shall demonstrate to the board of appeals that for each and every permitted use under the zoning regulations for the particular district where the property is located, (1) the applicant cannot realize a reasonable return, provided that lack of return is substantial as demonstrated by competent financial evidence; (2) that the alleged hardship relating to the property in question is unique, and does not apply to a substantial portion of the district or neighborhood; (3) that the requested use variance, if granted, will not alter the essential character of the neighborhood; and (4) that the alleged hardship has not been self-created.

N.Y. Town Law § 267-b(2).

Plaintiff argued on appeal to the ZBA that without a use variance, his property is "incapable of earning a reasonable return on total investments to date" (Am. Compl. ¶ 31), he will experience unnecessary hardship when his position at Indian Point Energy Center is terminated (see id. ¶ 32), a use variance "will not alter the [essential] character of the neighborhood" (id. ¶ 33) (emphasis removed), and his alleged hardship has not been self-created. (Id. ¶ 34).

According to plaintiff, on September 11, 2017, the ZBA held a public hearing, at which it denied plaintiff's request for a use variance, and that on November 9, 2017, the ZBA filed its decision respecting same.  According to the decision appended to plaintiff's original complaint, the ZBA determined "[t]he Applicant has not demonstrated by competent and credible evidence that a substantial hardship exists which inhibits the Applicant's ability to realize a reasonable

financial return due to his inability to utilize the property for two family residential purposes." (Compl. Ex. M at ECF 348).

      C.      State Court Proceedings

By letter dated September 25, 2017, plaintiff informed the ZBA he intended to file an Article 78 petition in state court challenging the ZBA's decision. (See Compl. Ex. P at ECF 353).

On February 9, 2018, plaintiff filed an amended Article 78 petition in Supreme Court, Rockland County, seeking reversal of the ZBA's decision "on the grounds that [the ZBA's] actions were arbitrary, capricious, an abuse of discretion and in violation of lawful procedure." (Doc. #30 ("MacCartney Decl.") Ex. B ("State Dec. & Order") at 1).

On June 26, 2018, Acting Supreme Court Justice Sherri Eisenpress issued a decision and order dismissing plaintiff's Article 78 petition and denying plaintiff's request for a judgment vacating the ZBA's decision denying plaintiff's application for a use variance. (See State Dec. & Order at 8).

Plaintiff claims he is appealing that decision to the Appellate Division, Second Department. (Am. Compl. ¶ 42).

      D.      Building Code Summons

Separate and apart from the Article 78 proceeding, plaintiff alleges the Town issued plaintiff a criminal summons on December 6, 2017, for violations of the Town building codes respecting the unlawful multi-family use of plaintiff's home. (See Compl. Ex. Q at ECF 359). As part of the criminal summons, Code Enforcement Officer Francis wrote: "In December 2016, I spoke with an individual by the name of Jacob Roy who stated to me he was a tenant at said

5

premises and rented the main house. As of December 4, 2017, Jacob Roy is still residing at 23 Germonds Road, New City, NY 10956." (Compl. Ex. Q at ECF 361).

Plaintiff alleges he pleaded not guilty to the criminal summons and has had "sixteen scheduled appearances," in Town Court regarding same. (Am. Compl. ¶ 39). Plaintiff argues the proceedings in Town Court were "deliberately done to create duress and intimidate [plaintiff] from utilizing all due process available to him." (Id.). According to plaintiff, the Town Justice has yet to rule on the pending motions in that action.

  E.  The Instant Action

Now, plaintiff brings claims pursuant to Section 1983, alleging the Town and its officials have a policy of "taxation without utilization" and that the Town's building codes and their enforcement are unconstitutional. Plaintiff also argues Town Law § 267-b(2)(b)—which governs the manner in which the ZBA may grant a use variance—is defective. Liberally construed, plaintiff's Section 1983 action implicates the Fourteenth Amendment's protections respecting: (i) takings; (ii) substantive and procedural due process; and (iii) other forms of discrimination.

**DISCUSSION**

I.  Standard of Review

  A.  Rule 12(b)(1)

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009).[3] "A case is properly

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011).  The party invoking the Court's jurisdiction bears the burden of establishing that jurisdiction exists.  Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).  When a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the court should consider the Rule 12(b)(1) challenge first.  Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

When deciding whether subject matter jurisdiction exists at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d at 143.  "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992) (citing Norton v. Larney, 266 U.S. 511, 515 (1925)).  When a factual challenge to the Court's jurisdiction has been raised, "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

B.     Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

A court assessing a Rule 12(b)(6) motion may "consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). Courts also may consider documents deemed "integral" to the complaint, id., and any matters subject to judicial notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

II.     Subject Matter Jurisdiction

Defendants argue that pursuant to the Rooker-Feldman doctrine, the Court lacks subject matter jurisdiction to the extent plaintiff pleads takings and due process claims arising out of the denial of the use variance.

The Court agrees.

The Rooker-Feldman doctrine encapsulates "the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005). The doctrine bars federal courts from adjudicating claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). Four requirements must be met for the doctrine to apply:  (i) the plaintiff must have lost in state court; (ii) the plaintiff must complain of injuries caused by a state court judgment; (iii) the plaintiff must invite federal district court review and rejection of that judgment; and (iv) the state court judgment must have been rendered before the federal district court proceedings commenced. See id.

With respect to plaintiff's complaints about the denial of the use variance to convert his single-family home to a multi-family home, all four prongs of the Rooker-Feldman doctrine are met. First, plaintiff lost in state court when Justice Eisenpress dismissed plaintiff's amended Article 78 petition and refused to vacate the ZBA's decision. Second, plaintiff alleges violations of his due process rights respecting the ZBA's denial of a use variance (i.e., Town Code § 267-b(2)(b) is defective and he is injured by the Town's policy of "taxation without utilization"). Third, such allegations necessarily require the Court to review the state court judgment

9

sustaining the ZBA's decision respecting plaintiff's request for a use variance. And finally, Justice Eisenpress issued her decision on June 26, 2018, well before plaintiff commenced the instant action on December 4, 2019.

Accordingly, all claims respecting plaintiff's alleged injuries caused by the ZBA's denial of a use variance must be dismissed pursuant to the Rooker-Feldman doctrine.

III.   Abstention

Defendants next argue the Court should abstain from rendering judgment respecting plaintiff's Fourteenth Amendment claims pursuant to Younger abstention.

The Court agrees with respect to plaintiff's pending criminal proceeding in Town Court.

A.   Legal Standard

Abstention is a judicial doctrine providing federal courts grounds to decline to hear cases out of "proper regard for the rightful independence of state governments in carrying out their domestic policy." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 724 (1996). This doctrine has four objectives: (i) to avoid decision of a federal constitutional question arising in a case which may be disposed of on questions of state law; (ii) to leave resolution of unsettled and important questions of state law to the state courts; (iii) to avoid interference with a pending state criminal proceeding; and (iv) to avoid duplicative litigation out of consideration for judicial administration. Marcus v. Quattrocchi, 715 F. Supp. 2d 524, 536–37 (S.D.N.Y. 2010) (discussing Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 814–17 (1976)).

The second objective applies "[w]hen there is a parallel, pending state criminal proceeding," and in such a situation "federal courts must refrain from enjoining the state prosecution" pursuant to the bedrock principles of federalism embodied in Younger v. Harris,

Case 7:19-cv-11115-VB   Document 38   Filed 07/27/20   Page 11 of 17

401 U.S. 37 (1971).  Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72 (2013).  When Younger applies, abstention is mandatory, and its application deprives the federal court of subject matter jurisdiction.  Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 816 n.22.

The Supreme Court has extended Younger to other exceptional circumstances, such as "civil enforcement proceedings" and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."  New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 367–68 (1989).

However, abstention is not appropriate if "the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it."  Huffman v. Pursue, Ltd., 420 U.S. 592, 611 (1975).  Moreover, "cost, anxiety, and inconvenience of having to defend against a single criminal prosecution" do not implicate such exception.  Id. at 601–02.

B.   Application

The Court finds the elements of the Younger analysis are satisfied, and abstention respecting the building code violations is warranted.  First, plaintiff is subject to an ongoing state criminal proceeding in Town Court.  Second, that proceeding implicates an important state interest in local zoning.  See Wandyful Stadium, Inc. v. Town of Hempstead, 959 F. Supp. 585, 590 (E.D.N.Y. 1997) (finding the state has an interest in criminal and civil proceedings to enforce a town zoning ordinance).  And finally, the Town Court proceeding affords plaintiff an adequate opportunity to raise any constitutional challenges he might have.

Plaintiff suggests is entitled to relief in federal court because the building code enforcement proceedings in Town Court were "deliberately done to create duress and intimidate

11

[plaintiff] from utilizing all due process available to him" (Am. Compl. ¶ 39), and thus, Younger abstention does not apply.  See Huffman v. Pursue, Ltd., 420 U.S. at 611.  Such allegations are conclusory.  Thus, the bad-faith exception to Younger abstention does not apply.  And to the extent plaintiff argues that the ongoing Town Court proceedings have somehow worked to deny him due process or equal protection, plaintiff can raise those complaints in that case.

However, in addition to declaratory and injunctive relief, plaintiff also seeks "compensatory and punitive damages," and "attorney['s] fees, court costs, and expert witness fees." (Am. Compl. at ECF 25).  Plaintiff's requests for damages are boilerplate and vague, and he requests attorney's fees even though he is not an attorney.  Nevertheless, Younger abstention applies only to suits for declaratory and injunctive relief, not money damages.  See Kirschner v. Klemons, 225 F.3d 227, 235 (2d Cir. 2000).  This is because "[w]hen money damages . . . are sought, it is less likely that unacceptable interference with the ongoing state proceeding, the evil against which Younger seeks to guard, would result from the federal court's exercise of jurisdiction." Id. at 238.  Accordingly, the Supreme Court has opined that when money damages which could not be recovered in a pending state court action are sought in a federal court action, the federal action should be stayed rather than dismissed so as to allow the parallel state proceeding to proceed without interference "while enforcing the duty of federal courts to assume jurisdiction where jurisdiction properly exists."  See Deakins v. Monaghan, 484 U.S. 193, 201–03 (1988).

Although the Second Circuit has suggested that district courts have the power to stay damages suits based on Younger abstention principles, see Kirschner v. Klemons, 225 F.3d at 238, the Circuit has also recognized "[t]he decision as to whether to stay a federal action

12

on the ground that there is a related action pending in a state court is committed to the sound discretion of the district court." United States v. Pikna, 880 F.2d 1578, 1582 (2d Cir. 1989).

Nevertheless, here, the Court need not decide the propriety of issuing a stay in this case, first because neither party has asked for one, and second, there are grounds for dismissing plaintiff's claims which, as discussed below, would avoid unduly infringing upon the Town Court criminal proceedings. See Siddiqui v. Rocheleau, 2018 WL 6519064, at *4 (D. Conn. Dec. 11, 2018) (declining to decide whether a stay would be appropriate on the basis of abstention principles when plaintiff's claims for money damages are subject to dismissal on other grounds).[4] The Court therefore turns next to the merits of plaintiff's claims serving as the basis for his request for monetary damages.[5]

IV.   Due Process Claims

Defendants argue plaintiff fails plausibly to allege constitutional due process violations. The Court agrees.

The Fourteenth Amendment commands that "[n]o State shall . . . deprive any person of . . . property, without due process of law." U.S. Const. amend. XIV, § 1.

A.   Substantive Due Process

To state a substantive due process claim, a plaintiff must allege that the complained-of state action compromised a constitutionally-protected liberty or property right, and the state action that deprived plaintiff of that interest was oppressive or arbitrary. MC v. Arlington Cent.

---

[4]   Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[5]   Because the Court finds Rooker-Feldman deprives the Court of subject-matter jurisdiction over plaintiff's claims respecting the Article 78 proceeding, and because Younger abstention applies to any ongoing proceedings before the Town Court respecting plaintiff's violations of the building code, the Court declines defendants' invitation to consider whether Colorado River abstention is a separate and independent basis for abstention in this matter.

Sch. Dist., 2012 WL 3020087, at *5 (S.D.N.Y. July 24, 2012).  The allegations must demonstrate more than mere conduct that is incorrect or ill advised.  Cunney v. Bd. of Trs. of Grand View, 660 F.3d 612, 626 (2d Cir. 2011).  Because "[s]ubstantive due process is an outer limit on the legitimacy of governmental action[,] . . . [s]ubstantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."  Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999).

In the land use context, an action for violation of substantive due process rights is "intended to be a tool capable of measuring particular applications to determine if the applicant had a legitimate claim of entitlement based on the likelihood that without the due process violation that application would have been granted."  Sullivan v. Town of Salem, 805 F.2d 81, 85 (2d Cir. 1986).

Liberally construed, the amended complaint alleges defendants violated plaintiff's substantive due process rights by depriving plaintiff "of [his] constitutionally protected right to utilize [his] property in . . . the manner [in] which [he is] being taxed."  (Am. Compl. ¶ 2).  To the extent plaintiff's substantive due process claims rest on allegations about how he is taxed with respect to his property, such claims must be dismissed because they do not suggest conduct "so outrageously arbitrary [so] as to constitute a gross abuse of governmental authority." See Natale v. Town of Ridgefield, 170 F.3d at 263.  Moreover, plaintiff does not offer plausible factual allegations that he had a "a legitimate claim of entitlement," and that absent the alleged "due process violation," his "application [for a use variance] would have been granted."  Sullivan v. Town of Salem, 805 F.2d at 85.  Accordingly, to the extent plaintiff raises a substantive due process claim, it must be dismissed.

14

B.     Procedural Due Process

To the extent plaintiff alleges a procedural due process claim, that claim is also subject to dismissal.

"Section 1983 protects against state action that violates a property owner's right to due process under the Fourteenth Amendment to the U.S. Constitution." Edelhertz v. City of Middletown, 943 F. Supp. 2d 388, 393–94 (S.D.N.Y. 2012), aff'd sub nom. Edelhertz v. City of Middletown, 714 F.3d 749 (2d Cir. 2013).  In the context of a procedural due process claim, "courts must engage in a two-step analysis:  first, a court must determine whether there exists a property interest of which a person has been deprived; and if so, a court must next determine if the procedures followed by the state were constitutionally sufficient."  Id.

As discussed above, to possess a federally protected property interest, a person must possess a legitimate claim of entitlement.  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972).  Such a claim does not arise from the Constitution, but rather from an independent source such as state or local law.  Id.  An abstract need, desire, or unilateral expectation, is not enough.  Id.  For example, under New York law, a vested nonconforming use—a use that came into existence before enactment of a zoning ordinance that prohibits such use, and that is continuously maintained after the zoning changes—may give rise to a federally protected property interest.  See Greene v. Town of Blooming Grove, 879 F.2d 1061, 1065 (2d Cir. 1989).  "Although a landowner has no vested interest in the existing classification of his property, a zoning ordinance cannot prohibit a use to which the property is lawfully devoted at the time the ordinance is enacted."  Id.

Here, plaintiff cannot plausibly allege he has a legitimate claim of entitlement to use of his property as a multi-family home because plaintiff does not allege his home was zoned for

15

multi-family use or used in such manner prior to the promulgation of the zoning ordinance prohibiting such use. In fact, plaintiff acknowledges that his property has historically been zoned for single-family use. He seeks to change that, by arguing the tax code allows multi-family homes or that the Town and its ZBA should grant a use variance. That plaintiff now seeks a variance or a change of zoning law belies any notion that plaintiff has legal entitlement to use his property as a multi-family home. Moreover, plaintiff's allegations respecting the change from Code 210 to 215 do not establish a claim of entitlement. See Greene v. Town of Blooming Grove, 879 F.2d at 1065.

Accordingly, plaintiff's procedural due process claims must be dismissed.

V.    Plaintiff's Remaining Claims

Plaintiff includes in the amended complaint a number of references to the Town's allegedly unconstitutional rental registry (see Am. Compl. ¶ 18), the Town Board's allegedly improper changes to the building code's definitions of senior housing and family (see id.), and the Town's allegedly unlawful discriminatory religious agenda. Because these allegations are conclusory and entirely devoid of factual support, any claims, liberally construed from these allegations, must be dismissed.[6]

VI.   Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d

---

[6] Because the Court finds plaintiff's complaint must be dismissed for lack of subject matter jurisdiction and for failure to state a claim, the Court need not address defendants' arguments respecting qualified immunity.

Cir. 2000).  District courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

However, leave to amend may "properly be denied for . . . 'futility of amendment.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  This is true even when plaintiff is proceeding pro se.  See Terry v. Inc. Vill. of Patchogue, 826 F.3d 631, 633 (2d Cir. 2016).  An amendment to a pleading is futile if the Court would lack subject matter jurisdiction over the proposed claim, see Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany, 615 F.3d 97, 99 (2d Cir. 2010), or "if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)."  Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002).  Such is clearly the case here.

## CONCLUSION

The motion to dismiss is GRANTED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is directed to terminate the motion (Doc. #28) and close this case.

Dated: July 27, 2020
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge